IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSICA ERIN HAMM, | CASE NO. 1:25-cv-423 |
| Plaintiff, | DISTRICT JUDGE BRIDGET M. BRENNAN |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Jessica Erin Hamm filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural background**

In August 2022, Hamm filed applications for disability insurance benefits and supplemental security income with a disability onset date[1] of July 1, 2018, *see* Tr. 244, 254, which was later amended to August 30, 2022, *see* Tr. 45. In pertinent part, Hamm claimed that she was disabled and limited in her ability to work due to the following medical conditions: degenerative disc disease in cervical and lumbar spine, osteoarthritis of right knee, bilateral carpal tunnel, fibromyalgia, diabetes mellitus, obesity, anxiety, post-traumatic stress disorder, and migraines. *See* Tr. 281. The Commissioner denied Hamm's applications initially and on reconsideration. Tr. 137, 142, 150, 154.

In March 2023, Hamm requested a hearing. Tr. 241. In December 2023, Administrative Law Judge ("ALJ") Robert Tjapkes held a telephonic hearing. Tr. 40–62. Watson appeared, testified, and was represented by counsel at the December 2023 hearing. *See* Tr. 46. Qualified vocational expert Michelle Ross also testified. Tr. 56. In February 2024, the ALJ issued a written decision finding that Hamm was not entitled to benefits. Tr. 14–34.

In March 2024, Hamm appealed the ALJ's decision to the Appeals Council. *See* Tr. 7. In January 2025, the Appeals Council denied Hamm's appeal, making the ALJ's February 2024 decision the final decision of the Commissioner. Tr. 1–6; *see* 20 C.F.R. § 404.981.

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

Hamm timely filed this action in March 2025. Doc. 1. In it, she asserts the following legal issue:

> Whether the ALJ erred when failing to identify substantial evidence supporting the residual functional capacity findings regarding a cane and nonexertional limitations resulting from Plaintiff's pain. Whether the ALJ erred in his evaluation of the opinion of treating physician Paul Chang, M.D. when failing to identify evidence inconsistent with or unsupportive of the opinion.

Doc. 9, at 1.

**Evidence**[2]

*Medical Evidence*

In September 2022, Dr. Chang noted that Hamm presented with "pain all over." Tr. 375. He remarked that her comorbidities included: COPD, hypertension, hyperlipidemia, obesity, chronic joint pains, fibromyalgia, irritable bowel, and bipolar disorder. *Id*. Dr. Chang recorded that Hamm weighed 284 pounds with a BMI of 46.7. Tr. 368. On examination, Dr. Chang noted that Hamm appeared obese and had poor dentition, but that her mental status and orientation were normal and her "level of distress" was comfortable. Tr. 376. Also in September 2022, Dr. Chang prescribed a cane for "intervertebral disc degeneration, lumbar region" and was instructed to "use as directed." *See* Tr. 3932. Dr. Chang's appointment note from this time reflects that Hamm had a wide gait and used a cane. Tr. 376.

---

[2] The evidence cited is generally limited to the evidence cited in the parties' briefs and relevant to the application period and arguments at issue.

In December 2022, Dr. Chang noted that Hamm continued to be "noncompliant and inconsistent with diet and diabetes management." Tr. 747. Dr. Chang's physical examination findings were unchanged between September and December 2022. Tr. 747–48.

In April 2023, Ami Hay, APRN-CNP[3] treated Hamm for complaints of thinning hair, weight gain, facial hair, and emotional issues. Tr. 2033. Nurse Hay noted that Hamm reported going to the gym twice weekly over the previous two months and that she had lost approximately 10 pounds. *Id.*

In August 2023, Tiffani Pinion, APRN-CNP, treated Hamm in a follow-up appointment for sleep issues. Tr. 1415. Nurse Pinion remarked that Hamm reported improvement with her daytime fatigue when she consistently used breathing therapy. *Id.* Nurse Pinion performed a physical examination of Hamm, which revealed normal musculoskeletal range of motion throughout, no neurological deficits, and normal cardiovascular functioning. Tr. 1418.

In October 2023, Dr. Chang noted that Hamm was noncompliant with her recommended diet and exercise and that she was inconsistent with her efforts to manage her diabetes. Tr. 3955. Dr. Chang also recorded that Hamm described recent falling episodes and that Hamm was "not using her cane much," despite reporting that she is "unsteady with her gait" and "clumsy and

---

[3] APRN is an abbreviation for Advanced Practice Registered Nurse. *Advanced Practice Registered Nurse (APRN)*, OhioAPRN.com, http://www.ohioaprn.com/what-is-an-aprn-.html [https://perma.cc/69UR-XX65]. CNP is an abbreviation for Certified Nurse Practitioner. *Id.*

4

sometimes her feet and ankle would buckle without warning." *Id*. On examination, Dr. Chang indicated that Hamm had no neck tenderness, normal cardiovascular testing, and normal motor strength and tone. *Id*. She did, however, have tenderness and swelling in her right ankle joint and wide-based gait with the use of a cane. *Id*.

In October 2023, orthopedist Thomas J. Seuzi, D.O., evaluated Hamm for right ankle pain. Tr. 1787, 1790. Dr. Suezi noted that Hamm described recurrent pain, with laxity in both ankles that caused her to fall, and that "she uses a cane to assist with ambulation and prevent falls." Tr. 1790.

In November 2023, Samantha E. Bark, DPM, treated Hamm for laxity in both ankles. Tr. 3802. Dr. Bark noted that Hamm was "in no acute distress," instructed Hamm to "continue wearing the ankle lacer brace as needed," and, rather than pursuing surgery, prescribed physical therapy to strengthen the ankle joint. Tr. 3810.

*Opinion Evidence*

In September 2022, Dr. Chang completed a residual functional capacity questionnaire. Tr. 3899. Dr. Chang listed diagnoses of lumber degenerative disc disease and joint pain. *Id.* Dr. Chang's markings on the questionnaire indicate his opinions that Hamm could: sit for six hours in an eight-hour workday; stand for three hours in a workday, with rests every 15 minutes; walk one hour in a workday, with rests every 15 minutes; occasionally lift and carry 10 pounds; occasionally bend; never squat, crawl, or climb; and miss four days

5

of work monthly as a result of treatment or her impairments. *Id.* Dr. Chang also opined that pain or other symptoms would continuously interfere with Hamm's ability to maintain attention and concentration to perform simple work tasks. *Id.* Dr. Chang did not provide any citation to records or other explanation for the limitations indicated on his questionnaire. *Id.*

*State Agency Reviewers*

In December 2022, state agency reviewing physician Steve McKee, M.D., found that Hamm, could perform work at the light exertional level with certain functional limitations. Tr. 94–95. Specifically, Dr. McKee opined that Hamm could occasionally lift, carry, push, and pull 20 pounds and 10 pounds frequently, and that she could sit, stand, and walk for no more than six hours out of an eight-hour workday. Tr. 94. Dr. McKee also found that Hamm could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, and never climb ladders, ropes, or scaffolds. Tr. 94. Finally, Dr. McKee opined that Hamm should avoid heavy machinery and unprotected heights. Tr. 95.

In April 2023, state agency reviewing physician Muraru Bijpuria, M.D., generally affirmed that Dr. McKee's findings on reconsideration by finding that Hamm could perform work at the light exertional level. Tr. 115. Dr. Bijpuria, however, further limited Hamm to standing or walking for no more than three hours out of an eight-hour workday. Tr. 115. Dr. Bijpuria also limited Hamm to frequent overhead reaching and frequent handling and fingering bilaterally. Tr. 116. And Dr. Bijpuria opined that Hamm should avoid unprotected heights,

6

dangerous moving equipment, commercial driving, extreme cold, extreme heat, humidity, and pulmonary irritants. *Id.*

**ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2023.

2. The claimant has not engaged in substantial gainful activity since July 1, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: right knee degenerative joint disease; cervical and lumbar degenerative disc disease; diabetes mellitus with peripheral neuropathy; chronic obstructive pulmonary disorder (COPD); obesity; anxiety; depression; posttraumatic stress disorder (PTSD); and cannabis use disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she cannot climb ladders, ropes, or scaffolds and cannot work around hazards such as unprotected heights or unguarded moving machinery. She must be allowed to use a cane

7

       for ambulation. The claimant can occasionally crouch, crawl, kneel, stoop and occasionally climb ramps and stairs, she can frequently handle and finger and have occasional exposure to occupational extremes of atmospheric conditions as defined in the Selected Characteristics of Occupations. The claimant can have occasional interaction with coworkers, supervisors, and the public. She cannot perform production rate work (such as on an assembly line) and can have occasional changes in workplace setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 20, 1978 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

8

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 20–34.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

> 1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.
>
> 2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.
>
> 3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.
>
> 4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not

    disabled. If not, the ALJ proceeds to the next step.

  5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than

10

a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

As an initial issue, Hamm has chosen an approach to briefing that is generally discouraged and specifically contrary to the Court's initial order. Hamm has listed just one issue presented but raised at least four separate issues that are not clearly contemplated in her sole issue statement. *See* Doc. 4, at 4.

11

Setting this problem aside, it appears that each of Hamm's sub-arguments are covered by one umbrella argument in which Hamm challenges the ALJ's evaluation of Dr. Chang's medical opinion. *See* Doc. 9, at 11 (introducing Hamm's argument section by generally citing the requirements for an ALJ's evaluation of medical opinion evidence). But, as the following demonstrates, the ALJ properly evaluated, and rejected as unpersuasive, Dr. Chang's opinion. So for that reason, and the other reasons explained, each of Hamm's arguments fail.

*First* up is Hamm's overarching argument that the ALJ failed to properly consider the persuasiveness of Dr. Chang's opinion.

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must

12

explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

Here, Hamm argues that the ALJ failed to adequately explain both the supportability and the consistency of Dr. Chang's opinions. *See* Doc. 9, at 13 (asserting that the "ALJ erred under the supportability factor"); *id.* at 14 (arguing that "even if the ALJ did correctly evaluate Dr. Chang's opinion under the supportability factor, the ALJ failed to provide any meaningful analysis under the consistency factor.").

When he evaluated Dr. Chang's opinion, the ALJ stated that "Dr. Chang's opinion is not persuasive or consistent with his own physical examinations or the record as a whole." Tr. 31. The ALJ then provided several reasons to support that statement. For instance, the ALJ noted that Dr. Chang "offers no objective evidence in support of extreme absenteeism, rests every 15 minutes (or offer how long each rest would be), support for the continuous interference and concentration as well as the inability to squat or craw." *Id.*

13

Additionally, the ALJ recognized that Dr. Chang prescribed a cane and that physical examinations since the cane was prescribed indicated Hamm used the cane. *See* Tr. 31. The ALJ identified, however, that those same physical examinations showed that Hamm had normal motor strength and tone, no swelling, and "routinely" unlabored respiratory effort with no wheezing. *Id*. The ALJ then concluded that "Dr. Chang's opinion offers limitations amounting to less than sedentary work without offering objective evidence in support." *Id*.

The ALJ's description of the lack of citation or explanation provided by Dr. Chang to support his opinion corresponds to the mandatory factor of supportability. 20 C.F.R. § 416.920c(c)(1). And the ALJ's references to a lack of support from "the record as a whole" goes to the consistency factor. 20 C.F.R. § 416.920c(c)(2). Importantly, the fact that the ALJ didn't use certain words, assuming it can even be said that the ALJ failed to do this, does not mean that the ALJ erred. *Cormany*, 2022 WL 4115232, at *3 (citing cases). The ALJ discussed both the absence of citation to any evidence in Dr. Chang's opinion, i.e. supportability, and the existence of record evidence that supported less restrictive limitations, i.e. consistency. So the ALJ complied with the applicable regulations by discussing the two mandatory factors that must be considered when evaluating the persuasiveness of Dr. Chang's opinion.

Moreover, the ALJ pointed to records found elsewhere in the opinion when he explained that "the record as a whole do[es] not support [the] assessed

14

limitations." Tr. 32. Importantly, the ALJ's decision includes detailed evaluation of the record as a whole including discussion of medical records from Dr. Chang and other practitioners. *See* Tr. 26–29 (discussing Hamm's treatment records for both mental and physical conditions). The fact that the ALJ did not repeat or specifically cite to contrasting medical records when evaluating Dr. Chang's opinion, and instead more generally referenced the record as a whole, is sufficient because the ALJ's decision is to be read as a whole. *See, e.g., Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 970 (6th Cir. 2021) (the ALJ's brief explanation discounting a medical opinion, in conjunction with the ALJ's discussion of the doctor's treatment notes and exam findings elsewhere in the decision, satisfied the articulation requirement for opinion evidence); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (same); *Kraig v. Kijakazi*, No. 1:21-cv-1253, 2022 WL 4232692, at *9 (N.D. Ohio Sept. 14, 2022) (ALJ's evaluation of opinion evidence read "in the context of the decision as a whole" contained sufficient articulation for discounting the opinion) (collecting cases). And, as indicated, the ALJ's decision includes a detailed discussion of the record, albeit located elsewhere in his decision. *See e.g.*, Tr. 26–29.

*Second*, Hamm asserts that "the ALJ's conclusory and insufficient analysis is not harmless given that the record contains findings from other providers consistent with Dr. Chang's opinion that [Hamm] had exertional and nonexertional limitations resulting from her spinal impairments and joint

15

pain." Doc. 9, at 6. The primary problem with this argument is that, as the ALJ recognized, Dr. Chang's opinion did not provide any citation to this allegedly consistent other evidence. Tr. 31 (noting that Dr. Chang provided "no objective evidence in support" of the limitations and that Dr. Chang's opinion was made "without offering objective evidence in support"). So Hamm's citation to evidence that was not cited in Dr. Chang's opinion or the ALJ's discussion of that opinion, *see* Doc. 9, at 16–18, but that she apparently believes is consistent with Dr. Chang's opinion, amounts to nothing more than her own interpretation of the evidence and speculation that substantial evidence could support a different outcome. Importantly, Hamm's burden is not to show that substantial evidence could support a different outcome. *See Jones*, 336 F.3d at 477 (explaining that the ALJ's decision should be upheld even if substantial evidence or a preponderance of evidence could support a claimant's position). Rather, Hamm must show that substantial evidence does not support the ALJ's conclusion. *Id.*, *see also Biestek*, 587 U.S. at 103. She has not done so.

*Third*, Hamm argues that "Dr. Chang was the only medical professional providing an opinion regarding [her] need for a cane, and the ALJ failed to identify substantial evidence supporting the RFC finding." Doc. 9, at 18. To find that a "hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing*, and describing the circumstances for which it is needed*." SSR 96-9p, 1996 WL 374185, at *7 (emphasis added). To show that an

16

assistive device must have been required, *a claimant* "must also show that his medical records *specifically document the circumstances in which he required an assistive device*—i.e., whether he required one at all times, during all activities, and on all terrains." *Barnes v. Comm'r of Soc. Sec.*, No. 5:21-cv-1688, 2023 WL 2988346, at *8 (N.D. Ohio Mar. 22, 2023) (emphasis added); *see* SSR 96-9p, 1996 WL 374185, at *7.

Hamm's third argument is confounding for at least three reasons. First, Hamm highlights that "Dr. Chang was the only medical professional providing an opinion regarding [her] need for a cane." *Id.* But this point detracts from her argument that the ALJ erred in evaluating Dr. Chang's opinion. Moreover, neither Dr. Chang's checkbox opinion, nor any other medical opinion, specifically described the circumstances in which Hamm needed a cane. *See* SSR 96-9p, 1996 WL 374185, at *7, *see also* Tr. 3932. Second, the ALJ explicitly found that Dr. Chang's opinion was unpersuasive. Tr. 31–32. And Hamm points to nothing that would require that an ALJ include limitations contained in an unpersuasive medical opinion into the RFC determination. Third, the ALJ *did* include a limitation for a cane in Hamm's RFC. *See* Tr. 24 (providing that Hamm "must be allowed to use a cane for ambulation").

In connection with this third sub-argument, Hamm also asserts that the lack of record evidence showing she used her cane *exclusively* for ambulation or that she didn't need her cane for other activities, such as going to the gym, shows that the ALJ's decision is not supported by substantial evidence. *See*

17

Doc. 9, at 19. Essentially, Hamm is proposing that the ALJ's finding that she needed to use a cane when walking is flawed because there is no evidence that *didn't* use the cane at other times. But Hamm does not attempt to provide any evidence that she used her cane when standing still or at the gym. *See id*. And the evidence that Hamm cites to show that she experienced injury when not using her cane to walk only illustrates why the ALJ did find she needed her cane for ambulation. *See id*. So the ALJ's decision to provide a limitation for use of a cane when ambulating is entirely supported by the record and Hamm's argument demonstrates as much.

*Fourth*, Hamm makes several arguments in the final pages of her brief challenging as "conclusory" the ALJ's rejection of nonexertional limitations. Tr. 20–22. But the ALJ explained that he rejected many of the opined nonexertional limitations because Dr. Chang "offer[d] no objective evidence in support of extreme absenteeism, rests every 15 minutes (or [] how long ach rest would be), support for the continuous interference with attention and concentration as well as the inability to squat or crawl." Tr. 31 (also stating that "Dr. Chang's opinion offers limitations amounting to less than sedentary work without offering objective evidence in support."). This is not a conclusory explanation. To the contrary the ALJ expressly explained what was lacking in Dr. Chang's opinion.

Additionally, the Commissioner points out that Dr. Chang's opinion is a check-box opinion. Doc. 11, at 5–6. In her reply brief, Hamm argues that the

18

ALJ "did not mention the format of [Dr. Chang's]. Doc. 12, at 2. While the ALJ did not use the label "check-box opinion," he did call it a "questionnaire" and repeatedly noted that the opinion contained no citations to objective evidence. Tr. 31. Review of the face of Dr. Chang' opinion likewise reveals that it was a check-box opinion. *See* Tr. 3899. So, in addition to the specific deficiencies that the ALJ identified, Tr. 31, the format of Dr. Chang's opinion makes it "patently deficient." S*ee Dollinger v. Comm'r of Soc. Sec.*, No. 22-3359, 2023 WL 1777386, at *4 (6th Cir. Feb. 6, 2023) (a checkbox form completed by a treating source which only contained a brief explanatory note for the assessed limitations "is the kind of 'vague and unhelpful' opinion that is patently deficient and could not have been credited by the Commissioner") (quoting *Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009) (doctor's reference to "testing" to support his conclusions on a questionnaire were "vague and unhelpful" and did not provide substantial evidence to support his conclusions)).

As Hamm highlights early on in her brief: "The more relevant the objective medical evidence and supportive explanations *presented by a medical source* are to support … [his] … medical opinions … , the more persuasive the medical opinions … will be." Doc. 9, at 13 (emphasis added) (citing *Goodman v. Soc. Sec. Admin.*, 2024 WL 623894, *14 (N.D. Ohio Feb. 14, 2024), in turn quoting 20 C.F.R. § 416.920c(c)(1)). The ALJ considered the "objective medical evidence and supportive explanations presented" in Dr. Chang's

19

"questionnaire" and found that there was neither objective medical evidence nor supportive explanations in Dr. Chang's questionnaire.

In sum, none of Hamm's arguments, all of which relate to the ALJ's evaluation of Dr. Chang's opinion, and the limitations contained therein, do not provide a basis for remand.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: November 14, 2025

                                         */s/ James E. Grimes Jr.*
                                         James E. Grimes Jr.
                                         U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).